## THE OAK.

### THE DAUNTLESS.

(District Court, E. D. Virginia. October 20, 1906.)

TOWAGE—LOSS OF TOW—UNSEAWORTHINESS.

Conflicting evidence considered, and *held* not to sustain the allegations of a libel, that the sinking of a barge while being towed with four others tandem behind it from Baltimore to Norfolk, and when passing into Hampton Roads through the channel to the west of Thimble Light, was due to the negligence of the tug, either in proceeding when the weather was so stormy as to render it imprudent, or in navigation, but to show that the sinking was due to the unseaworthiness of the barge which was old and unable to stand the strain put upon it as first of the tow.

In Admiralty. Suit to recover damages for loss of barge in tow.

Edward R. Baird, Jr., for libelant.
John W. Oast, Jr., and Floyd Hughes, for respondent

WADDILL, District Judge. On the morning of the 14th day of March, 1906, the steam tug, Dauntless, 100 feet long, 400 horse power, left the port of Baltimore bound for Norfolk, with five loaded barges in tow; one of which was the Oak, the property of the libelant. The Oak was 140 feet long, 23½ feet beam, 302 tons net burden, and loaded with 630 tons of fertilizer, and was the hawser barge in the tow; the hawser being 125 fathoms long, followed by four other barges of about the same length, all loaded, and on hawsers of about 75 fathoms each. On the evening of the same day, the tug and tow went into the port of Annapolis, on account of stormy weather, and remained there until the morning of the 16th, when they proceeded, and again came to anchor in the Patuxent river, on account of like weather conditions; remaining there until the morning of the 18th, when the voyage was again resumed. At that time the wind was about northwest, accompanied by snow, and continued in that direction until about 8 o'clock at night, when it changed to the southeast, and continued from that point with increasing velocity until the morning of the 19th, when it reached from 25 to 30 miles an hour, and so continued until the sinking of the barge. About 7 o'clock of that morning, the tug and tow were off Back river, and from that point proceeded on their course, with due allowance for drift to westward, for Thimble Light, making slow progress, with the wind and sea on the port bow; the weather conditions while unfavorable, not being such, in the estimation of the master of the tug. as to delay the trip. Upon reaching the vicinity of Thimble Light, the tug having changed her course to westward to go into Hampton Roads through the swash channel, and to the westward of Thimble Light, while passing Thimble Light, and about a mile therefrom, with the light about a beam of

the barge, and about 10:30 in the forenoon, during the weather conditions existing as aforesaid, the Oak was observed to be settling by the stern, and, in a short time, she sunk. The tug thereupon cut loose from the barge, the tow was broken up and came to anchor; the tug subsequently proceeded to Norfolk with two of the barges, and the remaining two were taken up by two other tugs; the crew of the sunken barge being taken on board the Pamlico, and brought to Norfolk.

The libel in this case is to recover for the loss of the barge, Oak, and the cargo of fertilizer and personal effects on board; the same having proved a total loss. The charges of negligence by the libelant and respondent, respectively, place the responsibility for the sinking of the barge one upon the other; and while many counter specifications of negligence and acts of omission are made, the case turns solely upon the issue of fact as to whether the sinking of the Oak was caused by the negligence of those navigating the Dauntless, in proceeding under existing conditions, having regard to tide, wind, and sea, to the westward of Thimble Light into shoal water, or from the unseaworthiness of the barge. The legal questions involved relate to the duty owed by the tug to the tow under her charge, on the one hand, and of the obligation of the Oak to be in seaworthy condition for the voyage in hand, on the other; and are too well settled to admit of serious controversy, or to call for special comment by the court. Considerable evidence was adduced by the parties, respectively, and the libelant sought to show that, in addition to the negligence at the time of the sinking of the barge, that the same had been subjected by the tug's negligence, to undue strain and increased exposure, by alleged improper navigation in shoal waters after leaving Back River Light, to the point of departure for Hampton Roads, and, on account of which the Oak had struck bottom twice before she finally sank near Thimble Light; due notice of which striking was signaled to the tug, but not heeded by her, as claimed by the libelant. After mature consideration of all the evidence, the conclusion reached by the court is that the claim that the barge, Oak, grounded before the occasion on which she sank at the point near Thimble Light, is not sustained. The fact that neither of the other barges encountered trouble, though one of them, at least, and probably two of them, and the tug, were of quite as heavy draft as the Oak, coupled with the Oak's failure to make known these two groundings, convinces the court that they did not take place. Whatever may be said as to the condition of the sea at the time of the sinking of the barge, and for several hours prior thereto, there was nothing to indicate or make probable that the Oak would have grounded, and the other four barges escape.

Coming to the accident, the evidence is conflicting as to what brought it about; but taking all of the facts and circumstances into consideration, and the fair inference to be drawn therefrom, the court is satisfied that the sinking occurred because of the unseaworthiness of the barge, Oak, rather than from any negligence on the part of those in charge of the tug, in proceeding to the westward of Thimble Light. The evidence is overwhelming that the course to the westward of Thimble Light is the one usually taken by navigators in charge of tows

of the size and draft of the one in question, coming into Hampton Roads; and, in the judgment of the court, there did not exist on this occasion conditions which made it impracticable or undesirable thus to proceed. On the contrary, it strongly preponderates in favor of that being, not only the proper, but the safe and more practicable, course to pursue, under the then conditions. It is true that there are shoals on either side of the inner channel to the westward of Thimble Light, over which it might not have been entirely safe to pass with a tow; but it seems quite clear that the master of the tug, who was an exceptionally prudent and experienced man in his line, having been on vessels for some 40 years, and none having higher qualifications, as is conceded, did not attempt to cross over these dangerous shoals, but proceeded in the channel, which was some 300 yards wide, between the shoals; and the evidence demonstrates that the sinking occurred in this channel, and not upon either shoal. It is highly improbable that one of Capt. Jones' long experience would have been so negligent in going in to the westward of Thimble Light, with a tow of this size, and under the existing conditions of wind and weather, as not to have proceeded within, instead of outside of, the channel. Those in charge of the tug positively swear that he did keep in the channel on this occasion. Every disinterested witness likewise so testified, including the master of the steamer New York, who had shortly before passed out across the bay to Cape Charles, and who further stated that in returning that evening, he found the Oak settled in this channel.

The court is convinced that the accident resulted from the unseaworthiness of the barge, and not because of insufficiency in the tug, or any negligence on the part of her navigators, either at the sinking, or any other time during the voyage. The barge was an old one, had been in service some 13 years, and bought at second hand by the libelant; and it is quite apparent that when subjected to the test of the strain upon her as the hawser barge, of four other barges to her rear, of about 1,000 tons each, herself heavily loaded, and the prevalence of the then weather conditions, that she gave way, took water, settled astern, and quickly sank.

A decree may, therefore, be entered, dismissing the libel, with costs.