## THE STURTON.

## THE VIRGINIAN.

### (District Court, E. D. Virginia. March 27, 1914.)

COLLISION (§ 95*)—TUG TOWING STEAMER FROM PIER—COMBINED FAULTS OF
TUG AND TOW.

The steamship Sturton, which was light and a very large and high vessel, was being towed out from the south side of the coal pier at Sewell's Point, while a very heavy southwest wind was blowing, and was blown to leeward and came into collision with another steamer lying on the north side of the pier and projecting about 30 feet beyond the end. *Held,* on the evidence, that the tug was in fault for failing to exercise the care, prudence, and caution required in view of the light condition of the steamship and the prevailing windstorm, and that the Sturton was also in fault in not having a competent crew nor sufficient steam up to properly assist in the maneuver.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*]

In Admiralty. Suit for collision by William Leisk, master of the steamship Sturton, against the steam tug Virginian. Decree for libelant for half damages.

Hughes, Little & Seawell, of Norfolk, Va., for libelant.

Harrington, Bigham & Englar, and T. Catesby Jones, all of New York City, and John W. Oast, Jr., of Norfolk, Va., for respondent.

WADDILL, District Judge. On the morning of the 20th of October, 1913, the steamship Sturton, and the steamship Lucigen were each coaling at the Virginia Railway piers, Sewell's Point, Va.; the Sturton on the south side of, and some 500 feet up in the dock, with her bow inshore, and the Lucigen on the north side immediately at its outer end, her bow extending out into the stream from the end of the pier some 30 feet.

About 12 o'clock noon, the steam tug Virginian, stationed at Sewell's Point to dock and undock vessels, made fast to the port quarter of the Sturton and proceeded to take her from the pier out to anchorage in Hampton Roads. The wind at the time was blowing heavily from the southwest. The Virginian moved the Sturton alongside of the pier in such a manner as she believed to be prudent, having regard to the safety of the ship and the pier, until she reached the outer end, when the Sturton, which was light, sitting high up out of the water, 49 feet at the bridge, encountered the full force of the storm, and was driven down and across the front of the pier, her port bow coming in collision with the port bow of the Lucigen, causing considerable injury to her, the Sturton being less damaged. The latter was a large tramp steamship 8,000 tons gross, 4,406 net, 395 feet overall, 51 feet beam, 28 feet deep, and the Virginian was a large ocean going tug of 500 horse power.

The Sturton's faults charged against the Virginian involve the lack of a skillful master; making fast to the ship improperly; taking out the ship in the existing weather; the failure to keep the tug up into

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the wind in coming out of the pier, and for allowing the Sturton to go to leeward. The Virginian's charges against the Sturton are that she was manned with an incompetent Chinese crew; that she failed to carry out the orders given by the master of the Virginian navigating her; that the steamship's starboard anchor was unseasonably and negligently let go by the crew of the steamship; and that the Sturton at the time of starting from her berth did not have available the steam power to carry out the necessary maneuvers as she had led the Virginian to believe.

Considerable testimony was taken by the parties respectively, and the case turns almost entirely upon the questions of fact, the law determining the obligation due from the tug to its tow being well settled (The E. V. McCaulley [D. C.] 189 Fed. 829; The Oak [D. C.] 148 Fed. 1005); and the conclusion reached by the court is that the accident was brought about as the result of the combined negligence of the two vessels, the tug in that it failed to exercise the care, prudence, and caution required of it in attempting to remove the ship in her light condition in the then prevailing windstorm, without taking into consideration the presence of the Lucigen. The pier is an exceedingly exposed place during the prevalence of high winds either from the northwest or the southwest; and, while ordinarily vessels can be docked and undocked there without difficulty, still the taking out from the southern side of the pier a ship of the size of the Sturton, light, with another ship extending beyond the end of the pier on the opposite side, was exceedingly difficult, and required the highest nautical skill to prevent the happening of such an occurrence as took place. The ship was a long one, unusually high out of the water, especially at her bow, the windstorm then prevailing very heavy, the exact velocity not known, though in the city of Norfolk, several miles inland, at and about the time of the collision, it was 48 miles an hour, and it is fair to assume that at this exposed place it was between 50 and 60 miles, most likely 60, which struck the Sturton full broadside as she emerged from the end of the pier, and made it extremely difficult to haul her into and hold her against the wind. The tug apparently appreciated this, and attempted to go slightly to leeward, with a view of the better escaping the full force of the wind; but this maneuver failed, the tug herself being forced one point to leeward. The Virginian, moreover, in attempting to take the ship out under the circumstances was at fault in failing to go and keep to windward, which she did not do; whether because she could not is immaterial, as far as the result of this case is concerned. The fact that the steamship was manned by a Chinese crew is indisputable, and that many of them were of doubtful competency is fairly apparent. How far that contributed to the accident cannot be said, further than that from the preponderance of the testimony it appears that the ship's carpenter, a Chinaman, did drop the starboard anchor about the time the bow of the ship emerged from the end of the pier, which seriously hampered the tug in its control of the ship, and undoubtedly helped to and did in part bring about the accident. It is not entirely clear that the steamship had up as much steam as would have been desira-

ble for the prompt and successful maneuvering of the ship in the prevailing weather conditions, which also tended to obstruct the tug in handling her.

It follows from what has been said that the accident was the result of the combined negligence of the two vessels, and a decree will be entered so ascertaining.